## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2021-0066-NAC |
| NOKIA CORPORATION, a Finnish corporation, NOKIA OF AMERICA CORPORATION, a Delaware corporation, NOKIA SOLUTIONS AND NETWORKS OY, a Finnish corporation, and NOKIA TECHNOLOGIES OY, a Finnish corporation, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 31, 2022
Date Decided:  January 31, 2023

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Matthew W. Holder, Martin R. Bader, SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP, San Diego, California; *Counsel for Plaintiff Continental Automotive Systems, Inc*.

Kelly E. Farnan, Blake Rohrbacher, Sara M. Metzler, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Matthew D. Richardson, Mark A. McCarty, Andrew J. Tuck, ALSTON & BIRD LLP, Atlanta, Georgia; *Counsel for Defendants Nokia Corporation, Nokia of America Corporation, Nokia Solutions and Networks Oy, and Nokia Technologies Oy*.

**COOK, Vice Chancellor**

This case is the latest iteration in a long-running dispute between the owner of certain patents essential to cellular standards and a manufacturer whose products incorporate the standards.

Nokia[1] is a multinational conglomerate primarily based in Finland that operates in the areas of telecommunications, information technology, and consumer electronics. Known widely for its phones, Nokia is also the owner of patents for the 2G, 3G, and 4G cellular networks that have become an essential part of modern life.

Continental Automotive Systems, Inc. ("Continental") is a leading supplier of cutting-edge automotive connectivity products, including devices for automobiles that provide wireless connectivity. Those products rely on cellular communication networks.

To ensure the interoperability of products that use cellular networks, industry groups called standard-setting organizations, or "SSOs," develop and maintain cellular standards. When a patent is necessary to meet (or "practice") a particular standard, that patent is considered a standard essential patent, or "SEP." Nokia claims that certain of its patents are SEPs.

---

[1] For simplicity, this decision refers to defendants Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia Technologies Oy as the "Foreign Nokia Defendants." The Foreign Nokia Defendants and Nokia of America Corporation ("Nokia of America") are collectively referred to as "Nokia."

At bottom, Continental wants a license to certain Nokia SEPs and contends that Nokia has failed to provide Continental with a license on appropriate terms. In this action, Continental asks the Court to require that Nokia offer Continental a license to the Nokia SEPs on terms and conditions that are either fair, reasonable, and non-discriminatory ("FRAND") or otherwise consistent with certain commitments made by Nokia. Continental also seeks various forms of declaratory relief.

Continental has two grounds for claiming a right to a license. First, Continental argues that it is entitled to a license because it is a Qualcomm customer. Nokia entered the Subscriber Equipment and Infrastructure Equipment License Agreement ("SULA") with Qualcomm under which Nokia agreed to license certain SEPs to certain Qualcomm customers. Continental claims it is covered by the SULA. Second, Continental argues that SSO policies mandate that Nokia license its SEPs on FRAND terms and conditions.

But while the ultimate dispute in this case is one of patent licensing, the issues at this stage involve Nokia's six jurisdictional arguments. First, Nokia argues that the SULA expired on December 31, 2022, depriving this Court of subject matter jurisdiction over Continental's claims. Second, Nokia argues that Continental lacks standing to bring its claims because Continental did not negotiate with Nokia for a license and because Continental has not suffered an injury-in-fact by failing to obtain

a license. Third, Nokia argues that Continental's requests for declaratory relief are an improper effort to obtain an advisory opinion. Fourth, Nokia argues that this Court lacks personal jurisdiction over the Foreign Nokia Defendants. Fifth, Nokia argues that Continental's case should be dismissed on the basis of *forum non conveniens* or improper claim splitting. And finally, Nokia argues that certain of the claims within Continental's complaint fail to state a claim upon which relief can be granted.

The expiration of the SULA moots some of Continental's claims, but not claims for pre-expiration breaches. I therefore grant in part and deny in part Nokia's motion to dismiss the claims premised on the SULA.

Continental has standing to bring its claims and they do not seek an improper advisory opinion. Those bases for dismissal are unavailing.

This Court may exercise personal jurisdiction over all the Nokia defendants for both Continental's remaining claims premised on the SULA and for all its claims not premised on the SULA. I therefore deny Nokia's motion to dismiss the foreign Nokia defendants for lack of personal jurisdiction.

Continental's claims should not be dismissed for *forum non conveniens* or improper claim splitting because the litigation in all other courts has been resolved.

Finally, Continental has alleged facts making it reasonably conceivable that Continental states a claim for Nokia's alleged pre-expiration breaches of the SULA,

3

and Nokia has not argued that Continental's remaining counts, which are not premised on the SULA, fail to state a claim.

## I.  BACKGROUND

The facts are drawn from the well-pled allegations in the Verified Complaint (the "Complaint") and documents properly incorporated by reference or integral to that pleading.[2]  For purposes of the motion to dismiss, the court must accept as true the Complaint's well-pled factual allegations and draw all reasonable inferences in Continental's favor.[3]

### A. Parties

Plaintiff Continental is a Delaware corporation with its principal place of business in Auburn Hills, Michigan.  Continental is an indirect subsidiary of Continental AG, a German corporation.  Continental AG is a leading supplier to automotive original equipment manufacturers ("OEMs").

Continental develops and commercializes telematics control units ("TCUs"), network access devices ("NADs"), and other devices that merge

---

[2] *Cont'l Auto. Sys., Inc. v. Nokia Corp.*, C.A. No. 2021-0066-NAC, Docket ("Dkt.") 1, Verified Complaint ("Compl."); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint).  To the extent allegations and claims by Continental are set forth in this decision without citation, they are drawn from the well-pled allegations of the Complaint.

[3] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

telecommunications, infotainment, and safety features. In some instances, Continental sells its TCUs directly to OEMs (*i.e.*, Continental acts as a "tier 1 supplier"); in other instances, Continental sells its NADs to other tier 1 suppliers who use the NADs to manufacture TCUs, which are then sold to OEMs (*i.e.*, Continental acts as a "tier 2 supplier"). The Complaint states that Continental's "customers commonly require that Continental secure all necessary licenses and supply products free of third-party [intellectual property] rights, and further that Continental indemnify its customers for the cost of any patent infringement claims related to Continental's products, as well as the cost of any license fees paid by the customer."[4]

Nokia is a multinational conglomerate primarily based in Finland. The Foreign Nokia Defendants are Finnish companies with headquarters in Espoo, Finland. Defendant Nokia of America is a Delaware company with headquarters in Murray Hill, New Jersey.

## B. Nokia's Agreements With Standard Setting Organizations

Nokia owns patents that are essential to the cellular standards adopted by various SSOs. As a member of SSOs, Nokia promised to license its patents in accordance with the SSOs' Intellectual Property Rights Policies ("IPR Policies").

---

[4] Compl. ¶ 10.

The IPR Policies require that members like Nokia license their SEPs to any user of the standard that requests a license on FRAND terms and conditions.

Continental contends that it is a third-party beneficiary of Nokia's FRAND commitments with SSOs because Continental is "a supplier of TCUs, NADs, and other products implementing various cellular standards[.]"[5]   Contrary to its obligations under the IPR Policies, Nokia has failed to provide Continental with a license on FRAND terms.

## C. The SULA[6]

On August 9, 2006, Nokia Corporation and Nokia Inc. filed a lawsuit in this Court against Qualcomm, Inc.[7]  Nokia argued that Qualcomm agreed with an SSO, the European Telecommunications Standardization Institute ("ETSI"), to license its

---

[5] *Id.* ¶ 7.

[6] Nokia also sued Apple in Delaware in a FRAND dispute regarding Nokia's 2G, 3G, and 4G patents where Nokia sought a declaration that it complied with its FRAND obligation pursuant to the ETSI IPR Policy.  *Id.* ¶ 23.

[7] *Nokia Corp. v. Qualcomm, Inc.*, C.A. No. 2330-CS, Dkt. 1 ("Qualcomm Compl.").  This Court may take judicial notice of "records of the court in which the action is pending and of any other court of this State or federal court sitting in or for this State."  D.R.E. 202(d)(1)(C). "Specifically, this Court may take judicial notice of court filings 'for certain limited purposes, such as to understand the nature and grounds for rulings' made by the court in which the documents were filed."  *Indem. Ins. Corp. v. Cohen*, 2018 WL 487246, at *1 (Del. Ch. Jan. 18, 2018) (quoting *In re Rural Metro Corp. S'holders Litig.*, 2013 WL 6634009, at *7–9 (Del. Ch. Dec. 17, 2013)).  Rule 202 does not permit me to take judicial notice of such filings for the truth of their contents.  *Id.*

SEPs on FRAND terms.[8]  Nokia argued that it was entitled to a license.[9]  Nokia sought various forms of relief, including (a) a declaration that Qualcomm was contractually bound by its FRAND commitments; and (b) an order compelling Qualcomm to negotiate in good faith over a license.[10]

After several years of litigation and on the eve of trial, Nokia and Qualcomm reached a settlement that included the SULA.[11]  By its terms, the SULA "continues in full force and effect until (and including) December 31, 2022[.]"[12]  Much of the dispute in this case concerns whether Continental can enforce certain third-party beneficiary rights included in the SULA.

### 1.  The License Obligation

Section 5.3 of the SULA provides that, "Nokia commits to offer a license for sales during the Term under the Nokia Standards Patents to each of Qualcomm's customers who requests such a license from Nokia or whom Nokia approaches about

---

[8] Compl. ¶ 22; *see also* Qualcomm Compl., ¶¶ 1, 19–30.  Nokia subsequently amended its complaint after engaging in over a year of discovery.  *See* Ex. 1 to Dkt. 50.

[9] Qualcomm Compl. ¶¶ 7–8, 31–33.

[10] *Id.*

[11] *Nokia Corp.*, C.A. No. 2330-CS, Dkt. 656 ("Settlement Letter"); *Nokia Corp.*, C.A. No. 2330-CS, Dkt. 658.

[12] Ex. 1 to Dkt. 1 ("SULA"), Preamble.

taking such a license." [13]  The SULA specifies royalty rates for "Subscriber Terminals" and "Modem Cards" that "incorporate Qualcomm-Branded Components."[14]  Continental argues that it is entitled to a license under this provision.

Continental separately argues that the settlement agreement in Nokia's litigation with Qualcomm gave Qualcomm the right to practice Nokia's patents, which in turn would exhaust Nokia's patent rights in Qualcomm products sold downstream.  Continental argues that Nokia has failed to provide and offer a license that takes into account that its patents are exhausted.

## 2. The Dispute Resolution Provisions

The SULA contains a convoluted dispute resolution provision, which states:

Qualcomm's Components customers will be third-party beneficiaries of this Section 5.3 with the right to enforce its terms, provided however, subject to the following paragraph, a Qualcomm Components customer will be permitted to enforce its rights as a third party beneficiary of this Section 5.3 solely as a defense or counterclaim in Litigation initiated by Nokia with such customer (or its distributors or customers for the accused product) in which Nokia Litigates based on any Nokia Standards Patent ("Nokia-Initiated Litigation"), unless the Qualcomm Components customer is unable (due to the nature and/or venue of the Nokia-Initiated Litigation) to enforce its rights as a third party beneficiary of this Section 5.3 as a defense or counterclaim in such Nokia-Initiated Litigation (in which case the Qualcomm Components customer may enforce its rights as a third-party beneficiary of this Section 5.3

---

[13] SULA § 5.3.

[14] *Id.*

8

in accordance with the terms of the first and second paragraphs of Section 22).[15]

In layman's terms, a Qualcomm customer may enforce its right to a license under the SULA from Nokia only if Nokia sues the customer—the customer cannot first sue Nokia. The only exception to this general prohibition is if the Qualcomm customer is unable to enforce its right to a license due to the rules of the forum in which Nokia sued the customer.

The SULA contains a forum selection provision (the "Forum-Selection Clause") which states:

> This Agreement is made and entered into in the State of Delaware and will be governed by and construed in accordance with the laws of the State of Delaware without regard to conflict of laws principles. The Parties agree that any dispute arising under or relating to this Agreement shall be litigated in the Court of Chancery of the State of Delaware, pursuant to 10 Del. C. § 346. The Parties agree to submit to the jurisdiction of the Court of Chancery of the State of Delaware and waive trial by jury.

> Notwithstanding the foregoing, if there is a determination that any dispute arising under or relating to this Agreement is not subject to 10 Del. C. § 346, the Parties agree that (i) if the Delaware Chancery Court has subject matter jurisdiction over such dispute, then such dispute will be adjudicated only by, and will be subject to the exclusive jurisdiction and venue of, the Delaware Chancery Court; or (ii) if the Delaware Chancery Court does not have subject matter jurisdiction over such dispute, then such dispute will be adjudicated only by, and will be subject to the exclusive jurisdiction and venue of, the Superior Court of Delaware, and each Party hereby irrevocably consents to,

---

[15] *Id.*

and waives any objection to, the jurisdiction or venue of the Delaware Courts with respect to such dispute.[16]

In short, lawsuits arising from or relating to the SULA are to be brought in the state courts of Delaware.

Further complicating matters, the SULA specifies conditions under which a third-party beneficiary can waive its rights to enforce Nokia's commitments:

> Notwithstanding the foregoing: (i) if (a) after Nokia has engaged in good faith negotiations with a particular Qualcomm Components customer for a license under the applicable Nokia Standards Patents for a period that is the longer of (1) twelve (12) months after the date on which Nokia first notified such customer of such customer having a need to take a license to the Nokia Standards Patents; or (2) six (6) months after the date on which Nokia notifies such customer (in accordance with this Section 5.3) of its rights under this Section 5.3, such Qualcomm customer has not entered into a license agreement with Nokia for a license to the applicable Nokia Standards Patents on terms compliant with this Section 5.3; or (b) a particular Qualcomm Components customer (1) first Litigates (through itself or any of its Affiliates) against Nokia, or (2) Litigates (through itself or any of its Affiliates) against Nokia based on a patent that would be covered by the definition of Nokia Standards Patents if such patent were owned by Nokia and if the word "Nokia" in the definition of "Nokia Standard Patents" were replaced by such Qualcomm customer's name, then in each case such customer will no longer be entitled to benefit from Nokia's commitments to license set forth in this Section 5.3[.][17]

Under the SULA, "to Litigate" means "to commence or prosecute patent infringement litigation (whether by claim, counterclaim, or otherwise)."[18]

---

[16] *Id.* § 22.

[17] *Id.* § 5.3.

[18] *Id.* § 1. In addition, "Litigation means any administrative, court, judicial, arbitral or other similar procedure for the resolution of a controversy whether based on a claim, a

## D. Nokia's Litigation Against Daimler AG

The SULA's dispute resolution provisions come into play through a series of patent infringement lawsuits brought by Nokia against Daimler AG in Germany. Continental alleges that "Nokia has pursued Continental's customers with infringement allegations and/or lawsuits, and has obtained injunctions against at least one Continental customer based on its use of Continental's products."[19] In 2019, Nokia filed ten patent infringement lawsuits in Germany against Continental's customer Daimler AG (the "Daimler Litigation").[20] Two wholly owned subsidiaries of Continental (the "Continental Affiliates") intervened in each action as third-party intervenors on behalf of Daimler.[21] Neither of the Continental Affiliates are parties

---

counterclaim, defense or other like demand, including any proceeding before the United States International Trade Commission ('ITC') and any similar proceeding brought in any other jurisdiction throughout the world." *Id.*

[19] Compl. ¶ 8.

[20] Dkt. 53 ("Hufnagel Decl.") ¶¶ 4, 8, 11, 15, 19, 24, 27, 30, 33, 36; Dkt. 48 ("Pl.'s Answering Br.") at 27. While these facts are taken from materials outside the pleadings, the facts set forth in this section are considered solely for subject matter and personal jurisdiction considerations discussed in greater detail below. I may properly consider materials outside of the pleadings, including affidavits, in deciding a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *Acierno v. New Castle Cty. Dep't of Land Use*, 2006 WL 1668370, at *3 (Del. Ch. June 8, 2006). In addition, "[i]n ruling on a Rule 12(b)(2) motion, the court may consider the pleadings, affidavits, and any discovery of record." *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

[21] Hufnagel Decl. ¶¶ 6, 10, 13, 17, 21, 26, 29, 32, 35, 37.

to this litigation. Nokia and Daimler ultimately settled the patent infringement lawsuits in June 2021.[22]

Continental filed this action on January 25, 2021.

## II. LEGAL ANALYSIS

Nokia argues that the Complaint should be dismissed under Court of Chancery Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).[23] Continental's claims fall into two classes: those that are premised on the SULA and those that are not.

Continental's first cause of action contends that Nokia breached its commitments under certain SSO's IPR Policies to license its SEPs on FRAND terms. Continental contends that as a user of cellular standards covered by Nokia's SEPs, it is a third-party beneficiary to Nokia's FRAND commitments. Continental asserts that Nokia has failed to offer Continental a license on FRAND terms and conditions. The claims in Count I are referred to as the "FRAND Claims."

Continental's second cause of action alleges that Nokia has failed to offer Continental a license to Nokia's patents at rates consistent with the SULA, which Continental says are still higher than "true FRAND" rates. Continental also contends that Nokia's patents are exhausted by virtue of the SULA such that Nokia

---

[22] Hufnagel Decl. ¶ 3.

[23] Dkt. 18.

cannot charge royalties for products that incorporate Qualcomm chipsets. The claims that make up Count II are referred to as the "SULA Claims."

Continental's third cause of action seeks declaratory relief corresponding to the alleged breaches in Counts I and II. Continental also seeks a declaration regarding what FRAND terms are and a declaration that FRAND terms must be consistent with apportionment principles. To the extent Count III seeks declarations premised on the SULA, those requests are "SULA Claims." To the extent Count III seeks declarations concerning Nokia's alleged FRAND commitments, those requests are "FRAND Claims."

**A. Continental Has Standing To Bring Its Claims Against Nokia**

Nokia argues that Continental's claims should be dismissed under Rule 12(b)(1) for lack of standing.[24] "The term 'standing' refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance."[25] "Delaware's standards for determining standing are generally the same as the requirements for establishing Article III standing in federal court."[26] "Unlike the federal courts, however, . . . we apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are

---

[24] Dkt. 37 ("Defs.' OB") at 23–31.

[25] *Dover Hist. Soc'y v. Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003).

[26] *Albence v. Higgin*, --- A.3d ---, 2022 WL 17591864, at *17 (Del. Dec. 13, 2022).

mere intermeddlers."[27]   "Where the issue of standing is related to the merits, a motion to dismiss is properly considered under Rule 12(b)(6) rather than 12(b)(1)."[28] But where, as here, "a party is arguing that the court lacks the authority to grant the relief requested by the plaintiff, standing is a jurisdictional question" evaluated under Rule 12(b)(1).[29]

The issue of standing is concerned "only with the question of *who* is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy."[30]   "The 'plaintiff bears the burden of establishing this Court's jurisdiction, and where the plaintiff's jurisdictional allegations are challenged through the introduction of material extrinsic to the pleadings, he must support those allegations with competent proof.'"[31]   Because Nokia is challenging Continental's standing under Rule 12(b)(1), "this Court may consider materials outside of the pleadings[.]"[32]

---

[27] *Id.* (quoting *Dover Hist. Soc'y*, 838 A.2d at 1111) (internal quotations omitted).

[28] *Appriva S'holder Litig. Co., LLC v. ev3, Inc.*, 937 A.2d 1275, 1280 (Del. 2007).

[29] *Spiro v. Vions Tech. Inc.*, 2014 WL 1245032, at *8 (Del. Ch. Mar. 24, 2014).

[30] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991) (emphasis in original).

[31] *Spiro*, 2014 WL 1245032, at *7 (quoting *Yancey v. Nat'l Trust Co., Ltd.*, 1993 WL 155492, at *6 (Del. Ch. May 7, 1993)).

[32] *Acierno*, 2006 WL 1668370, at *3.

A plaintiff can establish standing by showing that: "(i) the plaintiff has suffered an 'injury-in-fact,' i.e., a concrete and actual invasion of a legally protected interest; (ii) there is a causal connection between the injury and the conduct complained of; and (iii) it is likely the injury will be redressed by a favorable court decision.'"[33] To qualify as an injury-in-fact, the asserted harm must be "concrete and particularized, and . . . actual or imminent, not conjectural or hypothetical."[34] For an injury to be particularized, "it must affect the plaintiff in a personal and individual way."[35] For an injury to be concrete, it "must be '*de facto*'; that is, it must actually exist."[36] A "risk of real harm" may qualify as concrete.[37] These criteria parallel the requirements for Article III standing. Because Delaware courts take a more flexible approach to standing, a showing that satisfies the Article III requirements will establish standing under Delaware law. Failing to satisfy the requirements for Article III standing means that a court must determine whether standing nevertheless exists under Delaware law.[38]

---

[33] *Albence*, 2022 WL 17591864, at *17 (quoting *Reeder v. Wagner*, 974 A.2d 858 (Del. June 2, 2009) (TABLE)).

[34] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 904 (Del. 1994).

[35] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted).

[36] *Id.* at 340.

[37] *Id.* at 341–42.

[38] *Albence*, 2022 WL 17591864, at *17.

Nokia argues that Continental has not sufficiently pleaded injury-in-fact for three reasons: (1) Continental has suffered no injury because Nokia engaged in licensing discussions with an affiliate of Continental rather than Continental itself; (2) Continental has only alleged potential future injury; and (3) Continental's requests for declaratory judgment seek improper advisory opinions.[39] I reject each of these arguments.

### 1. Continental Negotiated With Nokia

Nokia argues that Continental has not suffered an injury-in-fact because Nokia discussed licensing with a different entity that is not a party to the case.[40] The plaintiff is Continental Automotive Systems, Inc., an indirect subsidiary of Continental Automotive GmbH, which is a direct, wholly owned subsidiary of Continental AG.[41] Nokia contends that it only discussed licensing with Continental Automotive GmbH.[42] Nokia argues that "it is axiomatic that affiliates do not have

---

[39] Defs.' OB at 23–31 (citing Ex. A to Defs.' OB ("Holopainen Decl.") ¶¶ 3–10).

[40] *Id.* at 24 (emphasis in original); Dkt. 63 ("Defs.' Reply Br.") at 18–20.

[41] Dkt. 52 ("Droessler Decl.") ¶4.

[42] Defs.' OB at 24–27.

standing to sue on behalf of another company merely because the two companies are in the same corporate family."[43]

Nokia's own declaration undermines its argument. In that declaration, an employee of Nokia averred that "certain employees and/or representatives . . . of Continental Automotive Systems Inc. have participated in communications and/or negotiations with employees and/or representatives of [Nokia] regarding a potential FRAND license."[44] The declaration acknowledges that discussions took place with Continental.

Furthermore, Continental has submitted a declaration from one of its lawyers involved in the license negotiations who avers that he spoke with Nokia about Nokia's SEPs.[45] The declaration attaches a letter that supports his assertion. The declaration further avers that both Nokia's employees and Continental Group's representatives used the term "Continental" to encompass all Continental entities.[46]

Continental has met its burden of establishing that it was one of the parties to the negotiations with Nokia. Moreover, Nokia must have been aware of Continental

---

[43] *Id.* at 27; *see also* Defs. Reply Br. at 20 ("The corporate form is observed and respected in Delaware, and Continental [ ] cannot create standing or a ripe dispute through vague references to 'Continental' to disregard corporate formalities and identity[.]").

[44] Holopainen Decl. ¶ 24; Pl.'s Answering Br. at 17–18.

[45] Dkt. 49 ("Djavaherian Decl.") ¶ 2.

[46] Djavaherian Decl. ¶¶ 7–28; Pl.'s Answering Br. at 18.

by May 2019 at the latest when Continental filed a lawsuit against Nokia in California.[47] To the extent Nokia's failure to offer a license in connection with these negotiations constituted an injury-in-fact, that injury was suffered by Continental.

## 2. Continental's Claims Are Ripe

Nokia next argues that Continental's claims are not ripe.[48] Nokia points out that it has never asserted an infringement action against Continental, nor has it ever threatened to do so.[49] Nokia argues that a risk of future harm cannot give rise to standing.[50]

The United States District Court for the Northern District of Texas already addressed this very issue and concluded that Continental *did* have standing to bring suit.[51] The same reasoning applies here.

---

[47] *Cont'l Auto. Sys., Inc. v. Avanci, LLC, et al.*, C.A. No. 5:19-CV-02520, Dkt. 1, Complaint for Breach of FRAND Commitments and Violations of Antitrust under Unfair Competition Laws.

[48] Defs.' OB at 28–29; Defs.' Reply Br. at 21–22.

[49] Defs.' OB at 29.

[50] *Id.* at 29–30 (first citing *Bebchuk v. CA, Inc.*, 902 A.2d 737, 743–44 (Del. Ch. 2006) for the proposition that a dispute is not ripe where future factual developments could shape future litigation; then citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11 (2021) for the proposition that "the mere risk of future harm, standing alone, cannot qualify as concrete harm").

[51] *Cont'l Auto. Sys., Inc. v. Avanci*, 485 F.Supp.3d 712, 726–27 (N.D. Tex. 2020).

Nokia points out that the district court held that Continental's alleged future indemnification obligations did not give rise to standing.[52]  That is beside the point. What matters now is the district court's finding that "since [Continental] alleges its unsuccessful attempts to obtain FRAND licenses from . . . the Nokia Defendants, [Continental] alleges an injury in fact with respect to its claims against those Defendants."[53]  On this basis, the district court denied the defendants' motion to dismiss for lack of Article III standing and ripeness.[54]

Continental argues that collateral estoppel or *res judicata* apply to the district court's ruling.[55]  Neither doctrine works because both require that the rendering court have jurisdiction over the subject matter of the action.[56]  The district court ultimately dismissed Continental's complaint for lack of jurisdiction.[57]  But while not binding, the district court's ruling is persuasive.  Like the district court, I

---

[52] Defs.' OB 29–30 (citing *Avanci*, 485 F.Supp.3d at 726).

[53] *Avanci*, 485 F.Supp.3d at 726–27.

[54] *Id.* at 727.

[55] Pl.'s Answering Br. at 17.

[56] Defs.' Reply Br. at 16–18; *see also RBC Capital Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 643–45 (Del. 2014) ("Ordinarily, a dismissal for lack of subject matter jurisdiction or for lack of standing will not operate as a final decree that bars later claims."); *Norman v. State*, 976 A.2d 843, 868 (Del. 2009) (holding that one factor that must be present to trigger collateral estoppel is that "the prior action has been finally adjudicated on the merits").

[57] *Avanci*, 485 F.Supp.3d at 735.

conclude that Continental has alleged injury-in-fact. Continental has alleged that "Nokia has declared that certain of its patents or patent applications may be or may become essential to cellular standards under considerations by [certain] SSOs, and committed to grant licenses to the disclosed patents on FRAND terms and conditions."[58] Continental has further alleged that it "has not been able to obtain such a license because Nokia has failed and refused to grant a license to Continental on FRAND terms."[59] As alleged, Continental is unable to obtain a license on FRAND terms to which Continental is entitled.

Continental therefore has three options: "1) rely on the OEMs to which it sells TCUs to obtain licenses which cover the TCUS; 2) violate the law by infringing on the SEPs; or 3) abandon production of products using the standards, and forego associated profits."[60] On these facts, Continental's inability to obtain a FRAND license is an injury-in-fact. Continental's allegations also identify a causal connection between Nokia's failure to offer a FRAND license and Continental's injury. A decision ordering Nokia to offer Continental a license would redress Continental's injury. Continental therefore has standing.

---

[58] Compl. ¶ 42.

[59] *Id.* ¶ 47.

[60] *Avanci*, 485 F.Supp.3d at 726.

### 3. Continental's Requests For Declaratory Judgments Would Not Constitute Advisory Opinions

Third, Nokia argues that Continental's requests for declaratory judgments are not ripe and so any ruling would constitute an advisory opinion.[61] As discussed above, the disputes are ripe, so a ruling would not constitute an advisory opinion.[62]

Alternatively, Nokia argues that Continental's requested relief would constitute an improper advisory opinion because Continental seeks an option for a license.[63] According to Nokia, an order requiring Nokia to offer Continental a license would create an option because Continental would not be bound to accept it.[64] Therefore, the order would not resolve the parties dispute and would be advisory.[65]

Nokia's argument misses the point. Continental's requests for declaratory relief would resolve disputes and prevent Nokia from demanding non-FRAND terms.[66] Like Nokia, Continental would have to live with the Court's ruling.

---

[61] Defs.' OB at 41.

[62] *Supra* Section II.A.2.

[63] Defs.' OB at 42–43; Defs. Reply Br. at 27–28.

[64] Defs. OB at 42–43.

[65] *Id.*; *see also* Defs. Reply Br. at 28 ("[Continental's] request for 'bargaining leverage' during potential licensing discussions should be denied as a request for an advisory opinion.").

[66] Pl.'s Answering Br. at 48.

"Delaware Courts are authorized, in certain situations, to hear actions for a declaratory judgment, but there must be an 'actual controversy' between the parties."[67] "In evaluating the justiciability of a declaratory judgment claim, a court must determine whether 'the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"[68] This determination implicates standing as "state courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers.'"[69]

I am satisfied at this stage that Continental has pleaded sufficient facts showing an actual controversy warranting the issuance of declaratory judgment. As already noted, Continental's claims are ripe. The declaratory judgment claims are intimately related to its requests for injunctive relief and addressing the contract issues will be necessary to resolve the controversy. Furthermore, Continental pointed to alleged breaches of the IPR Policies and the SULA that have caused Continental harm. Given this, the breaches of contract alleged by Continental are of

---

[67] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *16 (Del. Ch. Sept. 10, 2015) (citing 10 *Del. C.* § 6501).

[68] *Energy P'rs Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *6 (Del. Ch. Oct. 11, 2006) (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)).

[69] *Dover Hist. Soc'y*, 838 A.2d at 1111 (quoting *Stuart Kingston, Inc.*, 596 A.2d at 1382).

22

sufficient immediacy and reality to warrant the issuance of declaratory judgment if proven.

To argue for the opposite result, Nokia cites to *InterDigital Communications, Inc. v. ZTE Corp.*,[70] a case from the United States District Court for the District of Delaware. There, InterDigital had been in separate licensing negotiations with ZTE and Nokia for InterDigital's patent portfolio.[71] The negotiations ultimately broke down for various reasons, including claims that InterDigital's licensing offer was not on FRAND terms.[72] InterDigital sued both ZTE and Nokia in federal court.[73] Both ZTE and Nokia asserted counterclaims seeking declaratory judgments that InterDigital had not offered a FRAND rate and requesting the court to determine what FRAND license terms would be.[74] Relevant to the present dispute, the court found that ruling on ZTE's and Nokia' counterclaims would have little utility, highlighting that neither ZTE nor Nokia had committed in a sworn declaration to accept such a license.[75] The court also noted that "the determination of a FRAND

---

[70] 2014 WL 2206218 (D. Del. May 28, 2014).

[71] *Id.* at *1–2.

[72] *Id.*

[73] *Id.* at *2.

[74] *Id.*

[75] *Id.* at *3.

rate would not lead directly to a patent license," as there would be many other licensing issues that would need to be addressed.[76]

Although this case bears some superficial resemblance to *InterDigital*, a comparison of the two decisions supports a finding of justiciability here. A significant distinction between *InterDigital* and the present dispute is that Continental *has* submitted a sworn declaration committing to accept the terms of any license adjudicated by this Court.[77] And while I acknowledge that there could be complexity in determining the terms of a license to Nokia's patents, the fact that the relief sought is complex does not mean that Continental has not pleaded sufficient facts showing it may be entitled to such relief.[78]

---

[76] *Id.* (noting that "license agreements often include agreements as to warranties, indemnification, cross-licensing, trademarks and attribution, insurance, etc.").

[77] *See* Compl. ¶ 79 ("Continental is entitled to a declaratory judgment with respect to . . . a determination of what constitutes FRAND terms and conditions for a license to Nokia's 2G, 3G, and 4G SEPs, *with those terms and conditions being imposed on the parties*[.]") (emphasis added); s*ee also* Droessler Decl. ¶ 26. Because an argument that requested relief would constitute an improper advisory opinion goes to a question of this Court's subject matter jurisdiction, I may properly consider materials outside of the pleadings. *See Carlyle Invest. Mgmt L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *16 (Del. Ch. Sept. 10, 2015) ("A motion to dismiss for lack of a case or controversy goes to this Court's jurisdiction and is examined under Court of Chancery Rule 12(b)(1).").

[78] I also note that while Nokia contends that Continental's claims here are nonjusticiable or would otherwise constitute an advisory opinion, Nokia brought very similar claims in this Court against Qualcomm in 2006. *See* Qualcomm Compl. ¶ 66 ("Accordingly, Nokia seeks a declaratory judgment that Qualcomm's FRAND commitments constitute binding contractual obligations, and defining the principles by which a FRAND royalty must be calculated."); Qualcomm Compl. Prayer for Relief ¶ C ("Nokia respectfully requests that this Court . . . [a]djudge and decree that Qualcomm's commitment to license its essential

Therefore, in consideration of the above, I find that granting Continental's requests for either injunctive or declaratory relief would not constitute an improper advisory opinion.

## B. Continental's SULA Claims

I now address Continental's SULA Claims. This Court lacks subject matter jurisdiction over Continental's patent exhaustion claims included within Counts II and III. The remaining portion of the SULA Claims seek (1) a declaration that Continental is entitled to rates no greater than those included in the SULA and (2) an order requiring Nokia to offer Continental a license at those rates. Continental has shown that an adjudication as to item (1) would address past breaches of the SULA by Nokia and would not be rendered moot by the SULA's expiration. By contrast, item (2) seeks purely forward-looking relief that is rendered moot by the expiration of the SULA. Therefore, I grant in part and deny in part Nokia's motion to dismiss Counts II and III of the Complaint.

### 1. There Is No Subject Matter Jurisdiction Over The Patent Exhaustion Claims

In its second and third causes of action, Continental requests that this Court confirm that Nokia's patent rights are exhausted when Continental uses a Qualcomm

---

GSM and UMTS patents on FRAND terms is a binding contractual obligation, enforceable by Nokia[.]").

chip. Nokia argues that Continental's request is improper because patent exhaustion is solely a defense to patent infringement, and Nokia has not initiated or threatened an infringement action against Continental.[79] Nokia further contends that the request is improper because it would require resolution of an exclusively federal patent question.[80]

I agree with Nokia that this Court does not have subject matter jurisdiction over Continental's patent exhaustion claims. "[P]atent exhaustion is a defense to patent infringement, not a cause of action."[81] Given that patent exhaustion would only arise in a patent case, Continental's argument would require me to consider a patent-law question that falls within the exclusive purview of the federal courts.[82]

Continental's claim seeking declaratory relief on the question of patent exhaustion is dismissed for lack of subject matter jurisdiction.

---

[79] Defs.' OB at 43–44; Defs.' Reply Br. at 6.

[80] Defs.' OB at 44; Defs.' Reply Br. at 6.

[81] *Cont'l Auto. Sys., Inc. v. Nokia Corp.*, 2021 WL 5299243, at *3 (D. Del. Nov. 15, 2021).

[82] *See* 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights."); *see also Am. Home Prods. Corp. v. Norden Labs. Inc.*, 1992 WL 368604, at *2, *4–5 (Del. Ch. Dec. 9, 1992) (noting that while Delaware state courts may adjudicate patent-related defense to asserted claims, affirmative claims for declaratory relief related to the provisions and purposes of the patent laws are within the exclusive jurisdiction of the federal courts).

## 2. There Is Subject Matter Jurisdiction Over Some SULA Claims

The SULA expired on December 31, 2022.[83]   Nokia argues that upon expiration of the SULA, any claim for equitable relief under that agreement became moot and cannot provide a basis for jurisdiction.[84]   Nokia further argues that to the extent Continental has any other claims related to the SULA, those claims seek only legal declarations over which this Court lacks independent jurisdiction.[85]   As set forth below, the expiration of the SULA moots Continental's forward-looking requests.  However, the SULA's expiration does not moot Continental's request for declaratory relief to the extent those requests concern Nokia's past breaches. Furthermore, as this Court has equitable jurisdiction over Continental's FRAND Claims and because these FRAND Claims survive this motion to dismiss in their entirety,[86] exercising jurisdiction over the remaining SULA Claims is proper under the clean-up doctrine.

---

[83] SULA § 1.

[84] Defs.' Suppl. Br. at 1.

[85] *Id.* at 5–7.

[86] *See generally infra* Section II.C.

### a. The Expiration Of The SULA Moots Some Of Continental's Claims

"Under the 'mootness doctrine,' although there may have been a justiciable controversy at the time the litigation was commenced, the action will be dismissed if that controversy ceases to exist."[87]  "A dispute is moot only if a grant of relief cannot have any practical effect on the existing controversy."[88]  Because determining whether a dispute is moot "is a peculiarly fact-intensive exercise, a court should not dismiss claims unless it is certain they could have no practical effect on the parties if adjudicated."[89]  Nokia argues that "[t]his Court has held that equitable relief under an agreement is moot or unavailable after the agreement expires—even where the agreement expires after a complaint was initiated."[90]  In support of this proposition,

---

[87] *State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A.3d 628, 632 (Del. 2013).  In *Davis*, our Supreme Court stated that there are two exceptions to the mootness doctrine: "situations that are capable of repetition but evade review or matters of public importance."  *Id.* (quoting *Gen. Motors Corp. v. New Castle Cnty.*, 701 A.2d 819, 823 n.5 (Del. 1997)).  Continental does not allege that either of these exceptions are applicable here.

[88] *PPL Corp. v. Riverstone Hldgs.*, 2020 WL 3422397, at *3 (Del. Ch. June 22, 2020).

[89] *Id.*

[90] Defs.' Suppl. Br. at 2.

Nokia cites to two cases: *Levinson v. Continental Insurance Services, Inc.*[91] and *All Pro Maids, Inc. v. Layton*.[92]

In *Levinson*, this Court addressed whether an action brought by the Insurance Commissioner of Delaware seeking to have a contract declared void was moot once the contract expired by its own terms.[93] This Court held that "[t]he existence of equitable jurisdiction is ordinarily to be ascertained as of the time of filing the complaint. If, however, a contract expires by its own terms during the pendency of an action and there can be no harm to plaintiff by the existence of the uncancelled instrument, equity need not continue to assert jurisdiction."[94]

In *All Pro Maids*, this Court addressed whether a noncompetition clause was still enforceable after the agreement which contained such clause expired by its own terms.[95] The Court concluded that once the agreement expired, it could not be "specifically enforced as written," including the noncompetition clause within the agreement.[96]

---

[91] 1991 WL 50145 (Del. Ch. Apr. 4, 1991).

[92] 2004 WL 1878784 (Del. Ch. Aug. 9, 2004), *aff'd Layton v. All Pro Maids, Inc.*, 880 A.2d 1047 (Del. 2005) (TABLE).

[93] *Levinson*, 1991 WL 50145, at *1.

[94] *Id.* at *2.

[95] *All Pro Maids*, 2004 WL 1878784, at *12.

[96] *Id.*

Continental argues that the expiration of the SULA will not deprive the court of subject matter jurisdiction because "the existence of jurisdiction is to be ascertained as of the timing of the filing of the complaint."[97]  Because it filed its Complaint in January 2021, nearly two years before the expiration of the SULA, Continental argues that the SULA's expiration will not change this Court's jurisdiction.[98]  However, as highlighted in *Levinson* and *All Pro Maids*, even though subject matter jurisdiction may have existed when the Complaint was filed, the expiration of the SULA may moot Continental's claims.

Continental's second cause of action requests that this Court order and declare that Nokia must provide Continental a license at rates no greater than the agreed-upon rates in the SULA.  However, the SULA specifically provides that "[f]or clarity, this Section 5.3 . . . will not apply to the royalties Nokia may charge for sales made by Qualcomm Components customers before or *after the Term*."[99]  Therefore, the provision Continental invokes expressly provides that it does not apply to licensing arrangements after the expiration of the SULA.  And because the remaining equitable remedy requested as part of Continental's second cause of

---

[97] Pl.'s Resp. to Defs.' Suppl. Br. at 1 (quoting *Diebold Computer Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 588 (Del. 1970)).

[98] *Id.* at 1–2.

[99] SULA § 5.3 (emphasis added).

action is forward looking and dependent on the continued enforceability of the SULA, Continental's request for an order granting a license under the SULA was mooted once the SULA expired.

Continental also seeks a declaration of its past rights and Nokia's breaches.[100] Those claims are not mooted by the expiration of the SULA. To ultimately succeed on its requests for declaratory judgment as to past breaches, it is not necessary that the contract in question (*i.e.*, the SULA) still be in effect—Continental only needs to show that the contract existed.[101] Furthermore, Continental has alleged that Nokia's past alleged breaches of the SULA caused harm to Continental. Even if the harm caused to Continental is nominal, an adjudication will have a practical effect on the parties.[102]

This result avoids the injustice that would otherwise befall Continental if I were to agree with Nokia's arguments about mootness. As the Supreme Court of the United States has held, moot cases should be disposed of in the manner "'most

---

[100] Pl.'s Resp. to Defs.' Suppl. Br. at 4.

[101] *See Weichert Co. of Pa. v. Young*, 2007 WL 4372823, at *2 n.15 (Del. Ch. Dec. 7, 2007) ("[T]he elements for a breach of contract claim are: the existence of a contract, the breach of an obligation imposed by that contract, and resulting damages to the plaintiff.") (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[102] *See Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, 2005 WL 3502054, at *15 (Del. Ch. Dec. 15, 2005) ("Even where actual damages cannot be demonstrated, the breach of a contractual obligation often warrants an allowance of nominal damages.") (citation omitted).

consonant to justice' . . . in view of the nature and character of the conditions which have caused the case to become moot."[103]  "The principal condition to which we have looked is whether the party seeking relief . . . caused the mootness by voluntary action."[104]  Both sides arguably bear some blame for the delay resulting in the mootness of some of Continental's SULA Claims.  Much of the delay since the commencement of this action, however, was not caused by Continental's voluntary action.[105]  Disposing of the remaining SULA Claims would, in these circumstances, not be the result "most consonant to justice."

### b. There Is Ancillary Jurisdiction Over The SULA Claims

Nokia contends that even if Continental's remaining SULA Claims are not moot, they nonetheless cannot support jurisdiction because they seek solely legal relief.[106]  The Court of Chancery is a court of limited jurisdiction which generally

---

[103] *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 115 S. Ct. 386, 391 (1994); *accord In re IBP, Inc.*, 793 A.2d 396, 404–407 (Del. Ch. 2002) (quoting the relevant passage regarding mootness from the *U.S. Bancorp Mortg. Co.* case), *aff'd Tyson Foods, Inc. v. Aetos Corp.*, 818 A.2d 145 (Del. 2003).

[104] *Id.*

[105] Some delay is attributable to Continental's failure to seek expedition and its overlapping claims in federal court.  Dkt. 34.  However, an eight-month delay resulted from Nokia's unsuccessful attempt to remove this case to the United States District Court for the District of Delaware.  Dkt. 13.  The district court ultimately remanded the action back to this Court. *Cont'l Auto. Sys., Inc.*, 2021 WL 5299243.  Additional delay was caused by the reassignment of this case in January 2022.  Dkt. 56.

[106] Defs.' Suppl. Br. at 5–7.

lacks subject matter jurisdiction over claims where there is an adequate remedy at law.[107] "It is well settled that the Declaratory Judgment Act does not independently confer jurisdiction on this court."[108]

This Court may exercise ancillary jurisdiction under the clean-up doctrine over a plaintiff's legal claims and requests for relief. "Fundamentally, once a right to relief in Chancery has been determined to exist, the powers of the Court are broad and the means flexible to shape and adjust the precise relief to be granted so as to enforce particular rights and liabilities legitimately connected with the subject matter of the action."[109] The clean-up doctrine allows this Court "to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation."[110]

---

[107] *Vama F.Z. Co. v. WS02, Inc.*, 2021 WL 1174690, at *2 (Del. Ch. Mar. 29, 2021) ("The Court of Chancery is a court of 'limited jurisdiction'; it acquires subject matter jurisdiction 'only where (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'") (quoting *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019)).

[108] *Reeder v. Wagner*, 2007 WL 3301026, at *1 (Del. Ch. Nov. 1, 2007)

[109] *Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 580 (Del. 1964) (citing 1 John N. Pomeroy, *A Treatise on Equity Jurisprudence* §115 (5th ed. 1941)).

[110] *Kraft v. WisdomTree Investments, Inc.*, 145 A.3d 969, 975 (Del. Ch. 2016).

In determining whether to exercise ancillary jurisdiction, this Court considers "whether the retention of the claims will: 1) resolve a factual issue which must be determined in the proceedings; 2) avoid a multiplicity of suits; 3) promote judicial efficiency; 4) do full justice; 5) avoid great expense; 6) afford complete relief in one action; or 7) overcome insufficient modes of procedure at law."[111]

This Court has jurisdiction over Continental's FRAND Claims.[112] The remaining factors weigh in favor of exercising ancillary jurisdiction. As this Court has already given in-depth consideration to Continental's SULA Claims, exercising ancillary jurisdiction over Continental's declaratory judgment claims avoids the need for multiple lawsuits in different Delaware courts, promotes judicial efficiency, and avoids the significant expense that would be associated with relitigating these issues.[113]

### c. Continental May Pursue Factual Questions Regarding The SULA In Discovery

To salvage its forward-looking SULA Claims, Continental argues that those claims "will not be mooted by the contract's expiration if (1) Nokia has offered those

---

[111] *Acierno*, 2004 WL 1488673, at *5 (citing *Clark v. Teeven Hldg. Co.*, 625 A.2d 869, 882 (Del. Ch. 1992)).

[112] *See generally infra* Section II.C.

[113] In addition, as highlighted above, this case has been pending in this Court for approximately two years. Exercising ancillary jurisdiction under the clean-up doctrine will ensure that further delay does not accrue as to Continental's SULA Claims.

same rates to others for a term *beyond* the expiration date, (2) Nokia might *extend* the SULA, and/or (3) a future license might cover *past sales*."[114]

Concerning point one, it is not apparent why Nokia's business dealings with unrelated third parties would affect Continental's rights, and Continental cites no law in support of this point. Continental's third point does not follow because it would require a finding that Continental is entitled to a license under an expired contract. As to Continental's second point, it would be relevant if Nokia and Qualcomm had mutually agreed to extend the term of the SULA. Continental can pursue that issue in discovery and, if warranted, amend the Complaint.

### 3. This Court Has Personal Jurisdiction Over All Nokia Defendants

Nokia has moved to dismiss Continental's SULA Claims against the Foreign Nokia Defendants for lack of personal jurisdiction.[115] Continental argues that the Foreign Nokia Defendants have consented to jurisdiction in this Court by virtue of the Forum-Selection Clause.[116]

---

[114] Pl.'s Resp. to Defs.' Suppl. Br. at 4 (emphases in original).

[115] Defs.' OB at 13–16; Defs.' Reply Br. at 5–12. This Court has general jurisdiction over Nokia of America because it is a Delaware corporation. *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."). Nokia does not argue that this court lacks personal jurisdiction over Nokia of America.

[116] Pl.'s Answering Br. at 32–37.

Nokia argues that the Foreign Nokia Defendants have not consented to jurisdiction through the Forum-Selection Clause for five reasons. First, Nokia argues that the SULA does not give rise to Continental's claims and, as such, the Forum-Selection Clause does not apply.[117] Second, Nokia argues that Continental is not a party to the SULA and therefore cannot invoke the Forum-Selection Clause.[118] Third, Nokia argues that the SULA grants only defensive rights to certain third-party beneficiaries and that Continental should have raised its alleged rights in connection with the Daimler Litigation in Germany.[119] Fourth, Nokia argues that Continental waived its alleged rights by filing offensive litigation against Nokia.[120] Fifth, Nokia argues that Continental waived its alleged rights by rejecting an offer under the SULA.[121] None of these arguments are persuasive.

### a. Continental Can Enforce Section 5.3

Nokia argues that Continental cannot invoke the Forum-Selection Clause because it provides that "[t]he *Parties* agree that any dispute arising under or relating to this Agreement shall be litigated in the Court of Chancery of the State of

---

[117] Defs.' OB at 13–14, 31–35.

[118] *Id.* at 14–16.

[119] *Id.* at 14, 36–38.

[120] *Id.* at 38.

[121] *Id.* at 38–40; Defs.' Reply Br. at 11–12.

Delaware, pursuant to 10 *Del. C.* § 346."[122] Nokia argues that because Continental is not a "Party" to the SULA it cannot enforce the Forum-Selection Clause.[123]

Nokia's argument ignores the third-party beneficiary provisions of the SULA. Under Delaware law, "[a] third-party beneficiary's rights are measured by the terms of the contract."[124] The SULA clearly provides that third-party beneficiaries have the right to enforce the Forum-Selection Clause when certain conditions are met.

Continental has pleaded sufficient facts showing that it is reasonably conceivable that Continental is a "Qualcomm Components customer."[125] Under the SULA, "Qualcomm's Components customers will be third-party beneficiaries of this Section 5.3 with the right to enforce its terms[.]"[126] This right is generally defensive and arises where Nokia initiates a lawsuit, but if certain conditions are met, the customer can enforce rights in accordance with the Forum-Selection Clause.[127] Sections 5.3 and 22, when read together, clearly establish that non-

---

[122] Defs.' OB at 14–15 (citing SULA § 22 (emphasis added)).

[123] *Id.* at 14–15.

[124] *NAMA Hldgs., LLC v. Related World Mkt. Center, LLC*, 922 A.2d 417, 431 (Del. Ch. 2007).

[125] *Infra* Section II.B.4.

[126] SULA § 5.3.

[127] *Id.*

37

signatories to the SULA have a right to enforce the Forum-Selection Clause under certain conditions.

### b. The Forum-Selection Clause Extends To The Foreign Nokia Defendants

Nokia takes the position that the Foreign Nokia Defendants are not parties to the SULA. Only Nokia is a signatory, but "[o]ne does not have to be a signatory to a contract" to be a party to the contract.[128] For example, in *MicroStrategy Inc. v. Acacia Research Corp.*, this Court held that a signatory's wholly owned subsidiary could be liable for breach of a contract that the subsidiary did not sign.[129] The contract at issue encompassed "Affiliates," which was defined to include "any entity which [the signatory], now or hereafter, directly or indirectly, owns or controls[.]"[130] Based on this language, this Court held that the contract "unambiguously contemplate[d]" that the subsidiary would be bound to the disputed provision.[131]

The same is true here. The Forum-Selection Clause was an agreement between the "Parties," which is defined in the SULA as Nokia and Qualcomm.[132] "Nokia" is defined in the SULA as "Nokia Corporation and all present or future

---

[128] *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343 (Del. 2003).

[129] *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *12.

[130] *Id.* at *2.

[131] *Id.* at *12.

[132] SULA §§ 1, 22.

Subsidiaries of Nokia Corporation."[133]  "Subsidiary" is defined in relevant part in the SULA as any entity "the majority . . . of whose shares or other securities . . . is now or hereafter controlled by [Nokia] either directly or indirectly."[134]  Continental has alleged that the Foreign Nokia Defendants are wholly owned subsidiaries of Nokia Corp., and Nokia has not disputed this allegation.  Therefore, the Forum-Selection Clause extends to the Foreign Nokia Defendants.

### c. Continental Can Assert Claims That Implicate The Forum-Selection Clause

Although Section 5.3 generally provides third-party beneficiaries only with defensive rights, Continental argues that it can assert offensive litigation against Nokia in this Court based on an exception in Section 5.3.[135]  Continental has made a *prima facie* showing that the exception applies.

"In ruling on a Rule 12(b)(2) motion, the court may consider the pleadings, affidavits, and any discovery of record."[136]  "If no evidentiary hearing has been held,

---

[133] *Id.* § 1.

[134] *Id.*  The full definition of "Subsidiary" is as follows: "any corporation or other legal entity: (i) the majority (more than fifty per cent) of whose shares or other securities entitled to vote for election of directors (or other managing authority) is now or hereafter owned or controlled by such Party either directly or indirectly; or (ii) that does not have outstanding shares or securities but the majority (more than fifty per cent) of the equity interest in which is now or hereafter owned or controlled by such Party either directly or indirectly, but only for so long as such ownership or control exists in (i) or (ii) above."  *Id.*

[135] Pl.'s Answering Br. at 26–29.

[136] *Ryan*, 935 A.2d at 265.

plaintiffs need only make a *prima facie* showing, in the allegations of the complaint, of personal jurisdiction and the record is construed in the light most favorable to the plaintiff."[137] "If the court takes that approach, then the jurisdictional question technically remains open until trial, when the plaintiff must prove the jurisdictional facts by a preponderance of the evidence."[138]

As part of its opening brief in support of its motion to dismiss, Nokia submitted an affidavit from Cordula Schumacher, a German attorney who represented Nokia Technologies Oy and Nokia Solutions and Networks Oy in the Daimler Litigation.[139] In her affidavit, Ms. Schumacher states that the Continental Affiliates "have been able to raise – and in fact, have expressly raised – certain defenses in support of Daimler AG that are ultimately based on Continental's position and purported legal rights with respect to [the SULA]."[140] Ms. Schumacher states that "[i]n essence, [the Continental Affiliates] have argued that Nokia would have breached FRAND commitments towards [the Continental Affiliates] by

---

[137] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008).

[138] *Harris v. Harris*, 2023 WL 165967, at *11 (Del. Ch. Jan. 12, 2023) (citing *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986)).

[139] Ex. E to Defs.' OB ("Schumacher Decl.") ¶ 1.

[140] *Id.* ¶ 8.

refusing to license to them on FRAND terms and condition" and focused on the patent exhaustion argument in particular in the Daimler Litigation.[141]

In her affidavit, Ms. Schumacher does concede that "it is correct that [the Continental Affiliates] cannot in their capacity as intervening third parties assert a counterclaim against Nokia within the German Proceedings[.]"[142]  Rather, to the extent the Continental Affiliates sought to assert a counterclaim against Nokia, "the Court could interpret such counterclaim as an admissible standalone action."[143]  In fact, per Ms. Schumacher, another party to the Daimler Litigation, Huawei Technologies Deutschland GmbH, brought a counterclaim against Nokia and the German court "separated this counterclaim and treated it as a standalone action[.]"[144] Nokia contends that because Continental could have asserted its rights against Nokia as a standalone, separate proceeding, Continental is contractually barred under the SULA from asserting its rights in this Court.

In response, Continental submitted an affidavit from Dr. Frank-Erich Hufnagel, a German attorney who represented the Continental Affiliates in

---

[141] *Id.* ¶ 9; *see also id.* ¶¶ 10–17 (setting forth the various arguments raised by the Continental affiliates premised on the SULA in the Daimler Litigation).

[142] *Id.* ¶ 18.

[143] *Id.*

[144] *Id.*

connection with the Daimler Litigation.[145]  Notably, Dr. Hufnagel's statements concerning German procedural law as it relates to third-party intervenors are substantially consistent with Ms. Schumacher's statements.  Both Dr. Hufnagel and Ms. Schumacher note that a third-party intervenor in German litigation is generally limited to supporting the party which filed the third-party notice.[146]  Furthermore, both Dr. Hufnagel and Ms. Schumacher agree that, under German procedural law, a counterclaim brought by a third-party intervenor would be separated and treated as an independent standalone claim.[147]  Per Dr. Hufnagel,

---

[145] Hufnagel Decl. ¶ 2.

[146] *Compare* Hufnagel Decl. ¶ 43 ("Due to the intervenor only participating in foreign proceedings, the intervenor is only entitled to assert means of challenge or defence based in the rights of the party it accedes to in support of said party . . . .  The intervenor cannot assert its own means of challenge or defence that are based exclusively on its own rights . . . .  It pursues its own interests only by procedurally supporting the interest in legal protection of the party it accedes to[.]") *with* Schumacher Decl. ¶ 6 ("As intervening third parties, [the Continental Affiliates] are entitled to assert means of challenge or defense and to effectively take all actions in the proceedings such that they are valid, provided that its declarations and actions are not in opposition to the declarations made and actions taken by Daimler AG as the primary party. . . .  Specifically, this means that [the Continental Affiliates were] inter alia entitled to allege and dispute facts as well as provide evidence to support the position of Daimler AG – as far as this is not in contradiction with Daimler AG's behavior.").

[147] *Compare* Hufnagel Decl. ¶ 44 ("[A]n intervenor cannot either bring a counterclaim that is based on its own rights . . . .  Such counterclaim would be treated as an independent stand-alone claim as any counterclaim by any third entity not involved in the legal dispute.") *with* Schumacher Decl. ¶ 18 ("While it is correct that [the Continental Affiliates] cannot in their capacity as intervening third parties assert a counterclaim . . . against Nokia within the German Proceedings, it is not excluded that if such counterclaim would have been – inadmissibly – brought by [the Continental Affiliates], the Court could interpret such counterclaim as an – admissible – standalone action.").

42

Due to their position as the recipient of a third-party notice . . ., [the Continental Affiliates] were not able to assert defenses based on their own rights or bring counterclaims based on their own rights once they acceded to the German actions as intervenors on the side of Daimler AG. [The Continental Affiliates] therefore did not (and could not) assert any rights of Continental, such as claims for a FRAND-license against any Nokia-entity based on [the SULA] in the German actions. Rather, [the Continental Affiliates] referred to the [SULA] as a supporting document for Daimler AG's defense that Nokia's assertion of injunctive relief in the German actions was a violation of Nokia's FRAND-promise and thus European antitrust law under Ar. 102 TFEU.[148]

Per Continental, because any counterclaim based on the Continental Affiliates' own rights under the SULA would be treated as a new standalone action, such a claim would need to be pursued in accordance with the provisions of the SULA.[149]

Section 5.3 of the SULA provides that third-party beneficiaries to Nokia's commitments under the SULA have the right to enforce the terms of Section 5.3 but "*solely as a defense or counterclaim* in Litigation initiated by Nokia with such [Qualcomm Components customer or its customers]."[150] There is an exception to this general restriction: if a "Qualcomm Components customer is unable (due to the nature and/or venue of the Nokia-Initiated Litigation) to enforce its rights as a third-party beneficiary . . . as a defense or counterclaim in such Nokia-Initiated Litigation[, then] the Qualcomm Components customer may enforce its rights as a third-party

---

[148] Hufnagel Decl. ¶ 47.

[149] Pl.'s Answering Br. at 29.

[150] SULA § 5.3 (emphasis added).

beneficiary . . . in accordance with the terms of the first and second paragraphs of [the Forum-Selection Clause]."[151] The Forum-Selection Clause provides, in relevant part, that disputes "arising under or relating to" the SULA are to be adjudicated by this Court.[152]

It is undisputed that certain of the Foreign Nokia Defendants sued Daimler AG in Germany and that Daimler AG is a customer of Continental. Continental has made a *prima facie* showing that when Nokia sued Daimler AG in Germany and the Continental Affiliates intervened, this lawsuit triggered Continental's right under the SULA to enforce their rights as a third-party beneficiary as a defense or counterclaim. Both Nokia and Continental have submitted affidavits from German lawyers stating that any defense or counterclaim that the Continental Affiliates may have brought against Nokia in the Daimler Litigation asserting such affiliates' *own* rights under the SULA would have been treated as a new standalone action. A new standalone action would, by its very nature, not have been a defense or counterclaim in the Daimler Litigation. Consistent with Section 5.3 of the SULA, Continental has made a *prima facie* showing that any new standalone action must have been brought in this Court.

---

[151] *Id.*

[152] *Id.* § 22.

Therefore, Continental has made a *prima facie* showing that it can assert offensive litigation in this Court under the SULA. Furthermore, Continental has made a *prima facie* showing that the Foreign Nokia Defendants have consented to personal jurisdiction in this Court under the SULA's Forum-Selection Clause. At trial, Continental must prove the facts establishing such consent by a preponderance of the evidence.

### d. Continental Has Not Waived Its Third-Party Beneficiary Rights

In the alternative, Nokia argues that Continental waived its ability to enforce Section 5.3 of the SULA by pursuing offensive litigation against Nokia.[153] Nokia points to language in Section 5.3 of the SULA providing in part that if "a particular Qualcomm Components customer . . . first Litigates (through itself or any of its Affiliates) against Nokia . . . then in each case such customer will no longer be entitled to benefit from Nokia's commitments to license set forth in this Section 5.3[.]"[154] Nokia argues that Continental waived its ability to assert its alleged rights under the SULA by filing offensive litigation in California federal court.[155]

---

[153] Defs.' OB at 38.

[154] *Id.* (citing SULA § 5.3(4)).

[155] *Id.*

This argument is easily dismissed. The SULA defines "to Litigate" to mean "to commence or prosecute patent infringement Litigation[.]"[156] Nokia has not alleged that Continental has commenced or prosecuted patent infringement litigation against Nokia. Therefore, the exclusion highlighted by Nokia is inapplicable.

### e. Nokia's Argument On Its Alleged License Offer Is A Factual Dispute

Nokia's last argument in support of is Rule 12(b)(2) motion is that Continental has rejected a license under the SULA and therefore cannot invoke the Forum-Selection Clause.[157] Nokia cites to Continental's claim in its Complaint that "a true FRAND royalty rate is less than the rates set forth in the [SULA] agreement between Nokia and Qualcomm."[158] Nokia proffers correspondence between a representative of Nokia and an alleged representative of an affiliate of Continental (Zonar Systems Inc.) where Nokia contends it offered Zonar a license.[159] Per Nokia, Zonar declined the offer.[160] Nokia points to Section 5.3(4)(i) of the SULA, which provides that any offer made by Nokia to Continental expired six months later and, after that,

---

[156] Pl.'s Answering Br. at 29–30 (citing SULA § 1). Indeed, Nokia seems to have recognized the fundamental problem with this argument as it did not even address Continental's argument on this point in its reply brief.

[157] Defs.' OB at 38–40; Defs.' Reply Br. at 11–12.

[158] Defs.' OB at 39; Defs.' Reply Br. at 11.

[159] Defs.' Reply Br. at 11–12 (citing Ex. 15 and Ex. 16 to Dkt. 51).

[160] *Id.*

Continental was no longer entitled to benefit from Nokia's commitments under Section 5.3.[161]

This argument seeks summary judgment in the guise of a jurisdictional motion. The Complaint does not allege that Continental rejected an offer from Nokia under the SULA. Continental only alleges that it believes a true FRAND rate is lower than the rates provided under the SULA.[162] The emails proffered by Nokia create disputes of fact. Continental submitted an affidavit from one of its attorneys that highlights those disputes.[163]

Continental need only make a *prima facie* showing of personal jurisdiction and the record is construed in the light most favorable to Continental.[164] Any factual disputes at this stage must be resolved in favor of Continental. Accordingly, Continental has made a *prima facie* showing that Nokia did not offer a license to

---

[161] *Id.*; *see also* SULA § 5.3 ("[I]f . . . after Nokia has engaged in good faith negotiations with a particular Qualcomm Components customer for a license under the applicable Nokia Standards Patents for a period that is . . . six (6) months after the date on which Nokia notifies such customer (in accordance with this Section 5.3) of its rights under this Section 5.3, such Qualcomm customer has not entered into a license agreement with Nokia for a license to the applicable Nokia Standards Patents on terms compliant with this Section 5.3 . . . then in each case such customer will no longer be entitled to benefit from Nokia's commitments set forth in this Section 5.3[.]").

[162] Pl.'s Answering Br. at 30–31.

[163] *See* Djavaherian Decl. ¶ 5

[164] *Ryan*, 935 A.2d at 265.

Continental consistent with the terms of the SULA and, as such, Continental has not waived its rights under Section 5.3 of the SULA.

## 4. It Is Reasonably Conceivable That Continental Is A Qualcomm Components Customer

Finally, Nokia has sought to dismiss Continental's SULA Claims under Rule 12(b)(6) for failure to state a claim. Nokia committed in Section 5.3 of the SULA "to offer a license for sales during the Term under the Nokia Standards Patents to each of Qualcomm's customers who requests such a license from Nokia or whom Nokia approaches about taking such a license" for certain "Subscriber Terminals"[165] and "Modem Cards"[166] at specified rates.[167] The question is whether Continental produces either "Subscriber Terminals" or "Modem Cards."

---

[165] "Subscriber Terminal means a complete end-user terminal that can be utilized, without any additional equipment or components (other than a SIM card, a battery or other like item routinely connected to the device by end-users when taking the terminal into use) being attached thereto, to initiate and/or receive wireless communications in accordance with one or more of the CDMA Standards, GSM Standards, and/or OFDM Standards. For clarity, if a device requires connection to a battery or other like item to initiate or receive wireless communications, then such articles are part of the Subscriber Terminal." SULA § 1.

[166] "Modem Card means a complete end user modem card that is capable of being used to implement wireless communication capability in accordance with one or more GSM Standards, CDMA Standards, and/or OFDM Standards when connected to another device by an end user by means of a physical or wireless consumer interface (*i.e.*, is not for use in embedded applications)." *Id.*

[167] *Id.* § 5.3.

"In interpreting contract language, clear and unambiguous terms are interpreted according to their ordinary and usual meaning."[168] "To demonstrate that a contract is ambiguous, a litigant must show that the language 'in controversy [is] reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'"[169] "If the plaintiff has offered a reasonable construction of the contract, and that construction supports the claims asserted in the complaint, then the Court must deny the motion to dismiss even if the defendant's construction is also reasonable."[170]

Continental has alleged that "as a supplier of TCUs, NADs, and other products implementing various cellular standards" it is a producer of either Subscriber Terminals or Modem Cards and therefore a third-party beneficiary to Nokia's commitments in Section 5.3 of the SULA.[171] Nokia contends that under the unambiguous terms of the SULA, Continental's TCU products do not qualify as

---

[168] *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

[169] *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 2011 WL 1348438, at *8 (Del. Ch. Apr. 8, 2011) (quoting *Pharmathene, Inc. v. Siga Techs., Inc.*, 2008 WL 151855, at *11 (Del. Ch. Jan. 16, 2008)).

[170] *Fortis Advisors LLC v. Shire US Holdings, Inc.*, 2017 WL 3420751, at *5 (Del. Ch. Aug. 9, 2017).

[171] Compl. ¶ 7; *see also* Compl. ¶ 73 ("Continental is a third-party beneficiary of the [SULA] and sells products covered by the [SULA].").

either "Modem Cards" or "Subscriber Terminals."[172]  In support of this argument, Nokia highlights that the definition of both "Modem Cards" and "Subscriber Terminals" contemplates devices sold as-is and fully operational to end users.[173]

Nokia argues that the term "end user" is unambiguous and means drivers that operate automobiles, not automotive OEMs that install Continental's products into their automobiles.[174]  In support of this argument, Nokia cites to two cases where courts interpreted the meaning of the term "end user": *Motorola Inc. v. PC-Tel, Inc.*, a case from the United States District Court for the District of Delaware, and *Multimedia Patent Trust v. DirecTV, Inc.*, a case from the United States District Court for the Southern District of California.[175]  In *Motorola*, the district court stated in a footnote that "[a]lthough not expressly stated in the form agreement, logically, the so-called 'End User distribution channel' contemplates sale to retail consumers[.]"[176]  In *Multimedia Patent Trust*, the district court held that "the plain

---

[172] Defs.' OB at 32–35; Defs.' Reply Br. at 23–26.

[173] Defs.' OB at 34–35; Defs.' Reply Br. at 23–26; *see also* SULA § 1 ("Subscriber Terminal means a *complete end-user terminal* that can be utilized, without any additional equipment or components[.]") (emphasis added); *id.* ("Modem Card means a *complete end user modem card*[.]") (emphasis added).

[174] Defs.' OB at 32–35; Defs.' Reply Br. at 23–25.

[175] Defs.' OB at 34; Defs.' Reply Br. at 25.

[176] *Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349, 352 n.5 (D. Del. 1999).

meaning of 'end user' is a person who employs the product for its final specific use of decoding MPEG-2 video.'"[177]

For its part, Continental highlights that the term "end user" is not defined in the SULA.[178] Continental also contends that it sells after-market products directly to consumers and such products meet the definition of "Subscriber Terminals" and "Modem Cards."[179] Finally, Continental alleges on information and belief that Nokia has taken the position in dealings with others that components like those sold by Continental do fall within the definition of "Subscriber Terminals" and/or "Modem Cards."[180]

In assessing the parties' arguments, I look first to dictionaries to determine the plain meaning of the term "end user," if any.[181] Some dictionaries define "end user" as the ultimate consumer or user of a product.[182] Other dictionaries provide a more

---

[177] *Multimedia Pat. Tr. v. DirecTV, Inc.*, 2011 WL 13100722, at *5 (S.D. Cal. Sept. 26, 2011).

[178] Pl.'s Answering Br. at 25.

[179] *Id.* at 25–26.

[180] *Id.* at 26.

[181] *See Lorillard Tobacco Co.*, 903 A.2d at 738 ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.")

[182] *E.g.*, *End User*, Merriam-Webster, https://www.merriam-webster.com/dictionary/end%20user (last visited Jan. 31, 2023) ("[T]he ultimate consumer of a finished product."); *End User*, Am. Heritage Dictionary, https://ahdictionary.com/word/search.html?q=end+user (last visited Jan. 31, 2023) ("The

general definition of "end user" as a person or organization that uses something rather than one that makes or sells it.[183]  The first definition would tend to support Nokia's asserted meaning whereas the second definition would tend to align with Continental's asserted meaning.  This analysis alone establishes that there are at least two reasonable interpretations of the meaning of the term "end user."

Nokia's cases are not sufficient, at this stage, to establish plain meaning. In *Motorola*, the term "end user" was capitalized, indicating that it may have been a defined term in the agreement at issue. The term is undefined in the SULA.  In *Multimedia Patent Trust*, the court found that "end user" meant the person employing the product for its final specific use, but that does not rule out the possibility that an automotive OEM is the person employing a TCU or NAD for its final specific use, namely the final use of installing the TCU or NAD into the automobile.

At this stage, it is not possible to construe the terms "Subscriber Terminals" and "Modem Cards" as a matter of law.  Nokia's Rule 12(b)(6) motion is denied.

---

ultimate consumer of a product, especially the one for whom the product has been designed."); *End User*, Oxford English Dictionary, https://www.oed.com/view/Entry/61863 (last visited Jan. 31, 2023) ("[T]he person who is the ultimate recipient or user of a product; the typical or intended customer or consumer.").

[183]  *E.g.*, *End User*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/end-user (last visited Jan. 31, 2023) ("[T]he person or organization that uses something rather than an organization that trades in it[.]").

## C. Continental's FRAND Claims

In its FRAND Claims, Continental has alleged that Nokia breached commitments made to SSOs to license its SEPs on FRAND terms. In connection with the alleged breaches, Continental has sought injunctive relief and declaratory relief. I reject Nokia's arguments for dismissal of these claims.

### 1. This Court Has Subject Matter Jurisdiction Over The FRAND Claims

Nokia states, in a fleeting reference, that the FRAND Claims do not seek "viable" equitable relief.[184] It is not clear what Nokia means by "viable" equitable relief. To the extent that this is an argument against subject matter jurisdiction, it fails.

The Court of Chancery is a court of limited jurisdiction that can exercise subject matter jurisdiction over a case if it falls into one of three buckets. "First, jurisdiction exists if a plaintiff asserts a claim sounding in equity. Second, jurisdiction exists if the plaintiff seeks equitable relief and there is no adequate remedy at law. Third, jurisdiction exists by statute."[185] "A request for injunctive relief clearly constitutes equitable relief over which this Court has jurisdiction."[186]

---

[184] Defs.' Suppl. Br. at 4.

[185] *250 Exec., LLC v. Christina Sch. Dist.*, 2022 WL 588078, at *3 (Del. Ch. Feb. 28, 2022).

[186] *Alpha Builders, Inc. v. Sullivan*, 2004 WL 2694917, at *2 (Del. Ch. Nov. 5, 2004).

Continental's FRAND Claims request, in part, that this Court order Nokia to offer Continental a license on FRAND terms. That is a request for injunctive relief. That request supports subject matter jurisdiction in this Court.

## 2. There Is Ancillary Personal Jurisdiction Over Nokia

Nokia has moved to dismiss the Complaint with respect to the Foreign Nokia Defendants for lack of personal jurisdiction.[187] Continental argues that the Foreign Nokia Defendants have consented to personal jurisdiction in this Court through the Forum-Selection Clause for all of Continental's claims, including its FRAND Claims.[188]

"[O]nce a valid claim has been brought and personal jurisdiction established over a party defending a proper claim . . . Delaware courts are justified in asserting personal jurisdiction over the defending party where the subject matter of the claim is 'sufficiently related to the plaintiff's independent claims.'"[189] "This policy is

---

[187] As discussed, this Court has general jurisdiction over Nokia of America because it is a Delaware corporation. *Supra* note 115.

[188] Pl.'s Answering Br. at 34–35.

[189] *Fitzgerald v. Chandler*, 1999 WL 1022065, at *4 (Del. Ch. Oct. 14, 1999) (quoting *Technicorp Int'l II, Inc. v. H. Frederick Johnston*, 1997 WL 538671, at *19 (Del. Ch. Aug. 22, 1997)).

consistent with the desire of our courts to achieve judicial economy and avoid duplicative efforts among courts in resolving disputes."[190]

Continental argues that once the Forum-Selection Clause applies, this court can exercise jurisdiction over "closely related" claims.[191]

In assessing Continental's argument, this Court's opinion in *SPay Inc. v. Stack Media Inc.* is instructive. In *SPay*, this Court found that it had personal jurisdiction based on a forum-selection clause within an asset purchase agreement.[192] This Court further held that it could exercise ancillary personal jurisdiction over a defendant for counts asserting breach of an employment agreement, breach of fiduciary duty, unjust enrichment, and conversion.[193] Exercising ancillary jurisdiction in that case was appropriate because "all of Plaintiff's claims [were] sufficiently related for personal jurisdiction purposes, as all of Plaintiff's claims relate to the same subject matter[.]"[194]

---

[190] *Id.*

[191] Pl.'s Answering Br. at 35 (citing *Fitzgerald v. Chandler*, 1999 WL 1022065, at *3 (Del. Ch. Oct. 14, 1999).

[192] *SPay, Inc. v. Stack Media Inc.*, 2021 WL 6053869, at *5 (Del. Ch. Dec. 21, 2021).

[193] *Id.*

[194] *Id.* (citation omitted).

Here, Continental has made a *prima facie* showing that this Court has personal jurisdiction over the Foreign Nokia Defendants for Continental's SULA Claims. Exercising ancillary personal jurisdiction over the Foreign Nokia Defendants for Continental's FRAND Claims is appropriate if those claims relate to the same subject matter as the SULA Claims. At bottom, all of Continental's claims seek a license to Nokia's SEPs. Continental has alleged two alternative bases for obtaining such a license, one premised on the SULA and one premised on Nokia's agreements with certain SSOs. The subject matter is the same, and the claims arise out of a common nucleus of fact based on Nokia's alleged failure to provide a license. I am satisfied at this stage in the litigation that Continental's FRAND Claims are sufficiently related to its SULA Claims to support the exercise of ancillary personal jurisdiction.[195]

Exercising ancillary personal jurisdiction does not work undue prejudice on the Foreign Nokia Defendants.[196] To begin with, the Foreign Nokia Defendants will

---

[195] As discussed, Continental has made a *prima facie* showing that the Foreign Nokia Defendants consented to personal jurisdiction in this Court for Continental's remaining SULA Claims. *See supra* Section II.B.3. Continental must prove by a preponderance of the evidence at trial the jurisdictional facts establishing personal jurisdiction over the Foreign Nokia Defendants. *Id.* If Continental fails to do so, then such failure would impact this Court's ability to exercise ancillary personal jurisdiction over the Foreign Nokia Defendants for Continental's FRAND Claims.

[196] *See Fitzgerald*, 1999 WL 1022065, at *4 (noting that exercising ancillary personal jurisdiction is appropriate "where the defendants suffer no unfair prejudice").

continue to be party to this litigation in connection with Continental's SULA Claims.[197]  Furthermore, Nokia agreed as part of the Forum-Selection Clause "that any dispute arising under or *relating to this Agreement* shall be litigated in the Court of Chancery of the State of Delaware[.]"[198]

The ordinary meaning of "relating to" is broad.[199]  The SULA arose out of Nokia's own litigation against Qualcomm in this very court.  In that case, Nokia sought declaratory judgment that Nokia had a right to implement ETSI standards under certain Qualcomm patents on FRAND terms.[200]  One of the bases for Nokia's lawsuit was the FRAND contract with ETSI.[201]  Here, one of the bases for Continental's lawsuit is the FRAND contract with ETSI.  As such, Continental's FRAND Claims relate to Nokia's prior litigation with Qualcomm, which gave rise

---

[197] *See SPay*, 2021 WL 6053869, at *5 ("Given that Palazzo indisputably is subject to the Court's jurisdiction for most of the claims asserted against him, the Court may properly exercise personal jurisdiction over him for all of the remaining claims.").

[198] SULA § 22 (emphasis added).

[199] *See Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017, 1033 (2021) ("ordinary meaning of the phrase 'relate to' is [] broad").

[200] Qualcomm Compl. ¶¶ 116–167.

[201] *Id.* ¶¶ 56–73.

to the SULA.  Therefore, by agreeing to litigate any disputes "relating to" the SULA in this Court, the Foreign Nokia Defendants consented to jurisdiction here.[202]

### 3. It Is Reasonably Conceivable That Continental Could Recover On Its FRAND Claims

Continental has pleaded sufficient facts as to its FRAND Claims such that it is reasonably conceivable that Continental could recover on those claims.  Nokia did not advance any contrary arguments, but merely asserted in its post-hearing supplemental briefing on mootness that Continental's claims based on Nokia's FRAND commitments were not "viable."[203]  That is insufficient, and any defense on this ground is waived.[204]

Nokia has argued at various points that the relief Continental seeks as part of its FRAND Claims is something no federal or state court has ever granted.[205] However, the basic premise of this argument—namely that Continental seeks

---

[202] Because I find that personal jurisdiction is appropriate under ancillary jurisdiction, I need not address Continental's remaining arguments as to personal jurisdiction.

[203] *See* Defs.' Suppl. Br. at 3.

[204] *See Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at *16 (Del. Ch. Dec. 30, 2020) (citing *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999)) ("It is well settled that arguments that were not raised in an opening brief and are beyond the scope of matter asserted in a responsive brief are deemed waived.").

[205] *E.g.*, Dkt. 78 at 10:2–6 ("Continental is asking this Court to do something that no United States court, no U.S. Federal court, no U.S. state court, has ever done without the consent of all the parties, namely set a global FRAND rate."); Defs.' Suppl. Br. at 4 ("Courts have recognized they should not attempt to impose global license terms absent mutual consent in the context of FRAND disputes.").

extraordinary relief—is contradicted by Nokia's prior litigation against Qualcomm, where Nokia sought comparable relief.[206]  Given Nokia's own conduct, its argument is not compelling.

**D. Nokia's *Forum Non Conveniens* And Claim Splitting Arguments Are Rejected**

Finally, Nokia asserts Continental's "claims should either be dismissed or, in the alternative, stayed pending resolution of the Fifth Circuit appeal involving nearly identical claims asserted in federal court."[207]  The appeal challenged the decision by the United States District Court for the Northern District of Texas in *Continental Automotive Systems, Inc. v. Avanci, LLC*, Case  (the "Federal Action").[208]  On June 21, 2022, the Fifth Circuit issued an order affirming "the judgment of the district court that Continental failed to state claims under Sections 1 and 2 of the Sherman Act."[209]  The deadline for Continental to seek certiorari has passed.[210]  Therefore, the judgment in the Federal Action is final, and that litigation provides no basis for dismissal.

---

[206] Qualcomm Compl. ¶¶ 7–8, 31–33; *see supra* Section I.C.

[207] Defs.' OB at 46; *see also* Defs.' Reply Br. at 29–33.

[208] Defs. OB at 45–46.

[209] *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 2022 WL 2205469, at *1 (5th Cir. June 21, 2022); *see also* Dkt. 70 ("The purpose of this letter is to inform the Court that the appeal in the Federal Action has now concluded.").

[210] Dkt. 70 at 2.

## 1. The Cryo-Maid Factors Do Not Favor Application Of *Forum Non Conveniens*

Nokia seeks dismissal on grounds of *forum non conveniens.* "In order to dismiss a plaintiff's complaint for *forum non conveniens*, the court must conclude, after a consideration of the relevant *Cryo-Maid* factors, that the procession of the litigation in the plaintiffs' chosen forum would subject the defendants to 'overwhelming hardship and inconvenience.'"[211] Nokia has failed to meet that burden.

In assessing whether Delaware is the appropriate venue for litigation, the Court considers the following factors (generally referred to as the *Cryo-Maid* factors): "(1) the relative ease of access to proof; (2) the availability of a compulsory process for witnesses; (3) the possibility to view the premises, if appropriate; (4) all other practical problems that would make the trial easy, expeditious, and inexpensive; (5) whether the controversy is dependent upon Delaware law, which the courts of this State should decide rather than those of another jurisdiction; and (6) the pendency or non-pendency of a similar action in another jurisdiction."[212]

---

[211] *Lisa, S.A. v. Mayorga*, 2009 WL 1846308, at *8 (Del. Ch. June 22, 2009) (citing *IM2 Merch. And Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *1 (Del. Ch. Nov. 2, 2000)), *aff'd Lisa, S.A. v. Mayorga*, 993 A.2d 1042 (Del. 2010).

[212] *GXP Capital, LLC v. Argonaut Mfg. Serv.*, 253 A.3d 93, 101 (Del. 2021).

Nokia primarily relied on the ongoing appeal of the Federal Action as the basis for its claim of *forum non conveniens*.[213] Nokia argued that the fourth and sixth *Cryo-Maid* factors strongly favored dismissal[214] and that the first, second, and third *Cryo-Maid* factors were neutral.[215] With the conclusion of the appeal, none of those factors are pertinent.

The only *Cryo-Maid* factor for which Nokia's argument was not heavily premised on the appeal of the Federal Action was the fifth factor, where Nokia argues that Continental's FRAND Claims are largely "claims . . . for breach of contract under *French* law[.]"[216] Assuming that to be the case, a Delaware court "must not let its own lack of facility in a foreign language or foreign law tilt the choice-of-law calculus [because] to do so is unfair to the parties[.]"[217] Furthermore, "Delaware courts often decide legal issues—even unsettled ones—under the law of

---

[213] Defs.' OB at 45–54.

[214] *See id.* at 50 (noting that the fourth *Cryo-Maid* factor "strongly supports dismissal for *forum non conveniens*" because the parties were "still awaiting the outcome of the Fifth Circuit appeal"); *id.* at 48 (noting that the sixth *Cryo-Maid* factor heavily favored dismissal because "there is a nearly identical case pending before the Fifth Circuit, where the parties and the Northern District of Texas have already invested substantial effort and resources in litigating issues that are closely related to the ones presented to this Court").

[215] *Id.* at 51–52.

[216] *Id.* at 49 (emphasis in original).

[217] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1060 (Del. 2015).

other jurisdictions,"[218] and "the mere application of foreign law is insufficient reason to utilize the *forum non conveniens* doctrine."[219]  Here, the sole *Cryo-Maid* factor that weighs in Nokia's favor is the potential application of French law.  This is an insufficient reason to dismiss based on *forum non conveniens*.

### 2.  There Is No Improper Claim-Splitting

Nokia also argues for dismissal on the theory that Continental is improperly splitting its claims between the Federal Action and this case.[220]  Because the Federal Action has been fully resolved, Nokia's argument is no longer relevant.

### III.   CONCLUSION

For the foregoing reasons, the motion to dismiss Count I is DENIED; the motion to dismiss Count II is GRANTED in part and DENIED in part; the motion to dismiss Count III is GRANTED in part and DENIED in part.  The parties are directed to submit a form of implementing order within ten days.

---

[218] *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 137 (Del. 2006).

[219] *Aveta, Inc. v. Colon*, 942 A.2d 603, 610 (Del. Ch. 2008).

[220] *See* Defs. OB at 52–53; Defs. Reply Br. at 29–33.